UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ROBERT MOSLEY, JR., VINCENT MOSLEY, AND FELICIA MOSLEY § § § Plaintiffs, § § v. § § BEXAR COUNTY, HENRIETTA § JOHNSON, AND SEAN MACAULEY § #2899 § Defendants. § | Cause No. 5:17-cv-583 |

## AMENDED COMPLAINT

Robert Mosley's surviving heirs respectfully bring this lawsuit to seek justice for Defendants' failure to provide their father with reasonable accommodations and necessary medical care during his incarceration in the Bexar County Jail, which resulted in his death at age 54.

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over federal civil rights claims, pursuant to 28 U.S.C. § 1331.

2. The events giving rise to the claims occurred in Bexar County, Texas. Accordingly, this Court is the proper venue, pursuant to 28 U.S.C. § 1391.

### PARTIES

3. Robert Mosley, at the time of his death, had three children who are his sole legal heirs: Robert Mosley, Jr., Vincent Mosley, and Felicia Mosley. They are bringing these claims. There were no probate proceedings arising from his death because none were necessary.

4. Bexar County operates the county jail where Robert Mosely died and was responsible for ensuring it operated in compliance with federal and state law. It is the proper defendant for claims under the Americans with Disabilities Act (ADA) and the Rehabilitation Act.

5. Licensed Vocational Nurse (LVN) Henrietta Johnson was the person at the jail who

chose not to treat Robert Mosley's obvious hip fracture, and consequently failed to secure treatment for the severe internal hemorrhaging that killed him. *She can be served at 6321 Beech Trail Dr, Converse, TX 78109.*

6. BCSO Deputy Sean MacAuley #2899 recognized that Robert Mosley was in medical distress and failed to take adequate steps to monitor him through his quickly deteriorating medical situation, and consequently failed to discovery in a timely manner that Mr. Mosely had slipped into unconsciousness on his cell floor or secure treatment for the severe internal hemorrhaging that killed him. *He can be served at 11830 Twin Oaks Path, San Antonio, TX 78254.*

## STATEMENT OF FACTS

7. Robert Mosley was arrested on July 22, 2015 after voluntarily turning himself in to resolve an old DWI charge from 2003. He was incarcerated in the Bexar County jail at 200 N. Comal Street in San Antonio, under the custody of the Bexar County Sheriff's Office.

8. Robert Mosley suffered from alcoholism, a protected disability under the ADA. Although the jail's intake screening questions revealed that he had a history of alcohol abuse, jail staff classified him as an "inmate worker" and assigned him to the jail's loading dock. But a few days after his turned himself in, Mr. Mosley began showing symptoms of alcohol withdrawal. Symptoms of alcohol withdrawal can include anxiety, fatigue, irritability, confusion, insomnia, nausea, hallucinations, and/or seizures. Mr. Mosley was observed by jail staff to be experiencing "a distorted reality," including talking to others who were not there, stomping on bugs that were not there, and hallucinating that his brother was in the jail's dayroom, which staff regarded as hallucinations resulting from alcohol detox.

9. Inmates experiencing withdrawal are more prone to falling and injury, and people with a history of significant alcohol use often have decreased liver functioning, which causes their injuries to bleed more. For these reasons, inmates experiencing withdrawal need to be housed in a

2

more protective environment than a comparable inmate would otherwise require. But, on information and belief, jail staff did not take reasonable steps to ensure Robert Mosley was in an adequately protective environment for an older patient experiencing alcohol withdrawal. As a result, he was exposed to an unnecessary risk of accidental injury.

10. On July 25, 2015, after Robert Mosley had spent a period of time displaying symptoms of withdrawal, he fell and suffered an "acetabular fracture," i.e. a fracture to socket portion of his "ball-and-socket" hip joint, which caused internal hemorrhaging. On information and belief, this happened at approximately 3:00 pm. Afterwards, he could not stand. After three hours, at approximately 6:20 pm, officers inquired into his condition and he told them that he could not get up or move his leg.

11. He was taken to the medical department in a wheelchair. He was examined by Defendant Johnson, who must have (as any competent medical provider would have) quickly concluded he had likely experienced a hip fracture, given his age, that his injury was caused by a fall, and symptoms like pain and severely impaired range of motion. She did not, however, secure adequate treatment for a hip fracture, and instead discharged him with the incorrect notation that he had regained the ability to stand. In truth, Robert Mosely would not stand again – a died a few hours later without regaining the ability to lift himself off the floor.

12. If Defendant Johnson had addressed Robert Mosley's obvious hip fracture by seeking appropriate medical treatment for such a serious injury, it would have been discovered that his hip fracture had caused a severe internal retroperitoneal hemorrhage which ultimately killed him. But the hemorrhage was not discovered and went untreated. As a result, he was found unresponsive on the floor of his cell the following morning at approximately 7:00 am, and was pronounced dead at the hospital shortly after 1:00 pm.

13. After Defendant's Johnson's examination, Mosely was returned to an 8-man cell, but since he couldn't stand, was he given a mattress on the floor. He continued to hallucinate, complained of hip pain, and dragged himself around "mopping the floor with himself."

14. The officer responsible for monitoring Robert Mosley in his cell was Defendant MacAuley. When MacAuley came on duty that evening, he was alerted that Mr. Mosley had experienced an injury that had required medical examination earlier in the evening. At approximately 3:00 am on July 26, 2015, Defendant MacAuley observed Robert Mosely displaying abnormal behavior on the floor of his cell, and called Defendant Johnson. Johnson told MacAuley that Mosely did not need additional medical attention and that staying in his cell was "the right place."

15. On information and belief, Defendant MacAuley did not check on Robert Mosley between 3:30 am and 7:00am, the very end of his shift, when he found Mosely unresponsive. He failed to do so even though he was aware that Mosley had experienced an injury, had not been able to stand since his injury, and was displaying pain, confusion, and abnormal behavior. If MacAuley had taken adequate steps to monitor Mr. Mosely, MacAuley would have learned more quickly that Mr. Mosely had slipped into unconsciousness and would have been able to secured medical attention for him sooner, which, on information and belief, would have saved his life.

16. Robert Mosley died of internal hemorrhaging a less than a day after his hip fracture without ever regaining coherence or the ability to stand. He spent his final few hours of life confused and crawling on the floor.

CAUSES OF ACTION

A.  <u>Americans with Disabilities Act and the Rehabilitation Act</u>

17. Robert Mosley was a person protected by the Rehabilitation Act and the Americans with Disabilities Act (ADA) because he had a physical or mental impairment (alcoholism) that impaired major life activities. His alcohol withdraw was a component of that impairment.

18. Bexar County was a recipient of federal funds at the time of Robert Mosley's detention. The Rehabilitation Act requires recipients of federal funds to make reasonable accommodations to their facilities, activities, and services for individuals with mental and physical impairments. 29 U.S.C. § 794 (2008). Bexar County was also to do so by Title II of the ADA, which has the same requirements as the Rehabilitation Act. 42 U.S.C. § 12131 *et seq.* (2008).

19. All of Bexar County's programs and services are subject to the ADA and Rehabilitation Act. It is required to make reasonable accommodations to ensure inmates with disabilities have appropriate access to programs and activities such as housing, security, and medical care.

20. Bexar County failed to make reasonable accommodations to its programs and activities for Robert Mosley, and consequentially, he suffered more punishment than inmates without disabilities and died.

21. Inmates experiencing withdrawal symptoms are more likely to fall and injure themselves. The correctional officials responsible for supervising Robert Mosley observed that he was experiencing withdrawal symptoms, were aware that his state of detoxification made him more vulnerable to accidental injury, and that the most prudent course of action to ensure his safety would be to assign him to more protective housing. Bexar County failed to make a reasonable accommodation to its housing programs when it did not move him to a housing assignment where he would be less likely to be injured in a fall.

22. Inmates experiencing withdrawal symptoms are less able to participate in their medical treatment by identifying and describing their medical needs. Bexar County failed to make a reasonable accommodation to its medical care when it did not modify its steps for diagnosis and treatment to accommodate Robert Mosley's impaired ability to participate in his medical treatment. Further, over night while he was hemorrhaging internally, Bexar County failed to make reasonable accommodations to his supervision – instead, it relied on his ability to self-report his symptoms, even though his ability to self-report was impaired by hallucinations and other confusion induced by his withdrawal symptoms.

23. If Bexar County had made reasonable accommodations for Robert Mosley, he would not have died.

B. <u>Failure to Provide Medical Care</u>

24. It is well established that public officials – including both medical staff and correctional officers – have a constitutional duty to provide inmates with necessary medical care. They violate that duty when they are deliberately indifferent to an inmate's serious medical needs.

25. Defendant Johnson was responsible for providing medical care to Robert Mosley, but she chose to ignore obvious symptoms of a hip fracture, and decided to let him wait until morning for real medical attention.

26. Defendant MacAuley was made aware of Robert Mosely's injury when he came on duty that evening, which was further confirmed by his personal observation that Mr. Mosely was unability to stand or get off the floor and by his outward display of pain and confusion. MacAuley was deliberately indifferent to those needs when he failed to adequately observe Mr. Mosely overnight or secure him necessary medical attention in a timely manner.

27. An injury that causes an inmate extreme pain is a serious medical need, and failure to adequately treat the pain shows deliberate indifference. Defendants showed deliberate indifferent

to Mr. Mosley's pain. Since they did not appropriately treat him for his pain, they did not discover his hemorrhaging, and as a result, he died. It is a venerable rule that a tortfeasor takes his victim as he finds him, so in failing to adequately treat his pain, they are also responsible for his consequential death.

28.   Further, severe pain is also clear evidence of an underlying medical need – the injury causing the pain. On information and belief, Defendants must have concluded Robert Mosley was reporting symptoms of a broken hip, based on his report of falling, his age, his severe hip pain, limited range of motion, and other symptoms. Had they appropriately pursued the unavoidable symptoms of a broken hip, they would have discovered his hemorrhage, and he would not have died.

29.   Finally, in the wake of a significant injury, it is necessary to monitor a person to ensure their condition does not degrade into a more dangerous situation. Defendants failed to adequately monitor Mr. Mosely – they left him on the floor of his cell overnight with hours between checking on his condition. When they finally checked on him at 7:00 am, he had been unconscious for a dangerous stretch of time and on information and belief had already suffered brain damage from oxygen loss. He did not wake up again, and died shortly after 1:00 pm that day.

## DAMAGES

30.   Plaintiffs seek compensatory and punitive damages.

31.   In their capacity as heirs to Robert Mosley's estate, Plaintiffs assert a survival claim on the estate's behalf. The estate has incurred damages including, but not limited to, conscious pain and suffering.

32.   In her individual capacities, Plaintiffs assert wrongful death claims. They suffered damages including, but not limited to, past and future mental anguish, loss of companionship, society, services, and affection with her father.

JURY DEMAND

33. Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs request a jury for all issues triable to a jury.

ATTORNEY'S FEES

34. Plaintiffs are entitled to reasonable attorney's fees, costs, and litigation expenses.

CONCLUSION

THEREFORE, Plaintiffs respectfully pray this Court grant the following relief:

A. Award compensatory and punitive damages;

B. Award reasonable litigation expenses, and court costs; and

C. Grant all other and additional relief to which she is entitled, at law or in equity.

DATED: July 20, 2017

Respectfully submitted,

/s/ Brian McGiverin
Brian McGiverin
Texas Bar No. 24067760
brian@lawcenterofaustin.com

DIETZ, LAWRENCE & MCGIVERIN
2221 Hancock Drive
Austin, TX 78756
Telephone: (512) 387-0718
Fax: (512) 597-0805

ATTORNEY FOR PLAINTIFFS

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing has been served on all counsel of record who have appeared in this matter through the court's Electronic Case Files System, and by email to attorney Jacquelyn M. Christilles, Bexar County Assistant Criminal District Attorney Civil Section.

/s/ Brian McGiverin
Brian McGiverin