UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ROBERT MOSLEY, JR, VINCENT MOSLEY, AND FELICIA MOSLEY<br>Plaintiffs<br><br>V.<br><br>BEXAR COUNTY, HENRIETTA JOHNSON, AND SEAN MACAULEY #2899<br>Defendants | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§     Cause No. 5:17-cv-583 |

HENRY ETTA JOHNSON'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

Now comes Henry Etta Johnson, L.V.N. [hereinafter Johnson] Defendant[1] in the above-styled and numbered cause, and, pursuant to Local Rule CV-7 of the local Rules of the United States District Court for the Western District of Texas and FRCP 56, files this her Motion for Summary Judgment and, in support thereof, shows the Court as follows:

1. **Summary Judgment evidence:** Johnson relies on the following summary judgment evidence which is attached hereto: Deposition of Henry Etta Johnson, L.V.N. (Exhibit E); Deposition of John Bennett, R.N. (Exhibit F); Deposition of Amber Weber, R.N. (Exhibit D); Deposition of Kevin Ponton (Exhibit C); Deposition of Candy Jenkins Guerra (Exhibit G);

---

[1] On October 10, 2018, Plaintiffs sought leave to file a Third Amended Complaint, which Johnson opposed because the amendment would cause undue delay and because Plaintiffs did not exercise due diligence in discovery. (Docket 86, 89) On November 19, 2018, this Court granted leave to file the Amended Complaint.(Docket 99) Plaintiffs Third Amended Complaint was filed on November 19, 2018 naming John Bennett, R.N. in his personal capacity, as an additional Defendant. (Docket 100) A Summons was never requested, a summons was never served on Bennett, Bennett has not entered an appearance and therefore, Bennett is not a party to this action. The evidence, argument and authorities cited and relied upon herein in support of Johnson's Motion for Summary Judgment would apply equally to the allegations against Bennett. Rule 4(m) requires a defendant be served within 90 days after the complaint is filed, otherwise the complaint should be dismissed. FED.R.CIV. P.4(m) There is a good cause exception to this Rule, which requires a showing at least as much as would be required to show excusable neglect, but simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice. *Newby v. Enron Corp.,* 284 Fed. Appx. 146, 149 (5thCir. 2008). It has been 8 months since Plaintiffs filed their Third Amended Complaint and discovery has now closed. Experts have been designated and deposed and the case is now ready for disposition. Good cause cannot be shown to excuse Plaintiffs' failure to serve Bennett within 90 days of November 19, 2018.

Deposition of Peter Holmes, M.D. (Exhibit J); Deposition of Sheryl Innerarity (Exhibit I); Deposition of Sean McAuley (Exhibit N); Deposition of James Feig (Exhibit O); Deposition of Peter Forsberg, PA (Exhibit B); Deposition of Katherine Whitely, M.D. (Exhibit P) Deposition of Robert Mosley (Exhibit K); Deposition of Felicia Mosley (Exhibit L); Deposition of Vincent Mosley (Exhibit M). Johnson also relies on the following documents which are attached to the Motion for Leave to File Documents Under Seal: the Bexar County Hospital District d/b/a University Health System medical records (Exhibit A); and the Autopsy Report (Exhibit H).

2. **Background and facts:** On June 22, 2015, Robert Mosley [hereinafter Mosley] was booked into the Bexar County Adult Detention Center (BCADC). (Docket 57) On July 22, 2015 at approximately 9:47 pm, Mosley went through medical screening, and the records show that Mosley denied excessive alcohol consumption and did not display any systems of alcohol withdrawal. (Exhibit A at 0013, Exhibit B at 41:21-42:2) Mosley was initially housed with the general population.(Exhibit A, B at 41:9-10) Based on his reported history of liver disease, Mosley was referred to the Chronic Care Clinic for follow up in a 2-3 days for unknown liver disease. (Exhibit A at 0014)

2. Three days later, on July 25, 2015 at approximately 12:37 a.m., Mosley was referred to mental health for reported "bizarre" behavior and was examined by Peter Forsberg, PA.(Exhibit A at 0017-0018, Exhibit B at 34:23-35:4, 38:24-39:1) Forsberg determined that Mosley likely consumed more alcohol than he admitted during medical screening, and ordered Mosley placed in the detox unit. (Exhibit B at 41:9-18, 42:24-8). Forsberg prescribed the standard detox protocol of Lorazepam and vitamins for Mosley. (Exhibit A at 001; B at 45:23-48:10, 50:9-52"1) Mosley was administered his detox medications and transferred to the detox unit. (Exhibit A, B at 42:24)

3. On June 25, 2015 at approximately 6:20pm, Officer Kevin Ponton called a "Code 1" because Mosley complained of hip and leg pain and had not gotten up to eat his meals. (Exhibit C, at 34:3-6) Amber Weber, RN responded to the Code 1 and charted the chief complaint as "Pain to right hip and knee."(Exhibit A at 0019; D at 83:2-11) Weber found Mosley lying on a mat on the floor in his cell, and noted that he had swelling and warmth to his right knee, was talking, alert and oriented to person, in no acute distress and refused to move. (Exhibit A at 0020) Weber testified that it was unclear whether Mosley was not getting up because he could not, or if was refusing to get up.(Exhibit D at 87:7-10) Weber tried to "bargain" with him by offering him a beer if he would get up, but he did not do so. (Exhibit D at 87:5-10) Because it was getting towards the end of the shift when the freeze would be instituted, and in order to save time, Weber and her assistant lifted Mosley into a wheelchair and he was taken to the medical unit.(Exhibit D at 86:5-15, 87:17-19; Exhibit C at 36:22-24) Weber testified that, on arrival to the medical unit, Mosley moved from the wheelchair to a wooden bench in the unit, on his own and without assistance. (Exhibit D at 103:22-104:7, 105:3-6) Weber took Mosley's history, evaluated him, took his vital signs while he was sitting on the bench, and determined that his blood pressure was high. (Exhibit A at 0019-0020, Exhibit D at 104:9-11).

4. Weber decided to keep Mosley in the medical unit for observation because of his blood pressure, and testified that Mosley moved from the bench to a gurney, again on his own and without her assistance. (Exhibit D at 103:22-25, 105:3-9) Based on his clinical presentation, her examination, and his ability to move from wheelchair to bench and bench to gurney without assistance or complaints of pain, Weber determined that it was not likely that Mosley had a fracture, and that he did not need immediate transfer out of the BCADC for an x-ray.(Exhibit D at 108:2-9, 132:18-134:18) Weber charted that Mosley complained of pain in his right hip and

knee and she created an Internal Referral Note for follow up for "Swelling +1 and pain 10 out of 10 to right knee" in 1-2 days.(Exhibit A at 0019-0020; Exhibit D at 82:20-83:1, 93:24-94:1). Weber gave Mosley an ice pack for his leg and administered his Lorazepam. (Exhibit A at 0020; Exhibit D at 94:2-3, 94:21-95:6). Weber testified that if she thought that Mosley had suffered a fracture, she would have consulted her supervisor. (Exhibit D at 127:20-128:12) Weber further testified that there was nothing preventing her from having Mosley transferred to University Hospital for an x-ray, but that his presentation was not consistent with a patient who had a hip fracture. (Exhibit D at 20:23-21:1, 62:16-63:3, 107:24-108:12) Because her shift was ending, Weber gave a shift report to Johnson, who took over Mosley's care. (Exhibit A at 0020; Exhibit D at 92:20-21, 100:8-15).

5. When Johnson took over Mosley's care, she took a history which indicated a complaint of right leg pain and that he could not put weight on his leg.(Exhibit A at 0021) She took his vital signs, and confirmed his blood pressure was still elevated. (Exhibit A at 0021) She did a physical examination, noting his leg was cool and dry to the touch, he had pedal pulses, right leg swelling but no bruising, and was able to move his leg. (Exhibit A p. 0021) After sleeping for about two hours, Mosley was no longer complaining of pain in his right leg, and was able to move his leg and foot without complaining of pain.(Exhibit A p. 0022) She rechecked his blood pressure and it had gone down significantly and he was able to stand on his own.(Exhibit A p. 0022) Johnson consulted with Bennett about the patient and Bennett evaluated and spoke to the patient, who said he felt better and wanted to return to his unit.(Exhibit A p. 0022, Exhibit E at 88:1-5, Exhibit F at 114:8-10). Both Bennett and Johnson confirmed that Mosely was able to stand, to walk and that he got off the gurney by himself, without any assistance. (Exhibit E at 145:9-20, Exhibit F at 113:19-114:12) Bennett agreed that Mosely could be returned to his cell

and he was released in stable condition at 10:43 pm, and walked out of the medical unit. (Exhibit A p. 0022, Exhibit E at 88:14-89:14, Exhibit F at 109:18-23114:8-12; 116:12-16) Johnson testified that, if she had thought Mosley had a hip fracture she would not have sent him back to his unit and if she suspected he had a fracture, she would have sent Mosley to University Hospital. (Exhibit E at 143:20-22, 144:11-19) Bennett testified that the amount of Lorazepam given to Mosley would not have enabled him to walk on a fractured hip. (Exhibit F at 203:9-14) Bennett also testified that he would not have sent the patient back to the unit if he suspected a fracture, that he did not believe Mosley had a fracture and that nothing prevented him from sending Mosley to the hospital for an x-ray. (Exhibit F at 125:12-21 148:15-18, 203:19-22)

6. Officer Candy Jenkins Guerra confirmed the fact that Mosley walked back to the detox unit. (Exhibit G at 84:9-24) Guerra testified that she and another officer escorted Mosley back to his cell because he was released from medical near the time of the "freeze." (Exhibit G at 82:9-23) According to Guerra, during the "freeze" inmates are supposed to be in their cells and not moving throughout the jail and that inmates released from medical during the freeze have to be escorted. (Exhibit G at 108:9-12, 107:19-108:8). Guerra testified that she was only there to provide assistance and not to push or pull Mosley along, that he walked "slowly" but that neither she nor the other officer carried Mosley. (Exhibit G at 84:22-24, 86:12-14, 116:3-12). Guerra also testified that it was common to help detoxing patients to walk because detox patients might be dizzy. (Exhibit G at 84:15-16)

7. Ponton testified that when Mosley returned to his cell after the Code 1, Mosley walked. (Exhibit C at 75:22-76:1). Ponton further testified that Mosley was able to walk on his own and would not have been allowed back into the cell if he was unable to walk on his own. (Exhibit C at 76:2-8) At approximately 11:00 pm on July 25, 2015, Officer Sean MacAuley

5

replaced Ponton as the unit officer assigned to the detox unit. (Exhibit N at 74:3-10) MacAuley testified that he checked on Mosley during his shift and Mosley responded to him. (Exhibit N at 103:20-25) On July 26, 2015, at approximately 7:00am, MacAuley found Mosley unresponsive in his cell and called a "Code 1 Blue." (Exhibit N at 154:4-18, Exhibit A at 0023) Nursing staff, including Weber, responded to the Code and took over CPR. (Exhibit A at 0024) An ambulance was called, and Mosley was transferred to Metropolitan Methodist Hospital. (Docket 100, Exhibit A at 0024) Mosley was declared dead at approximately 1:00pm on July 26, 2015. [Docket No. 100 ¶ 62] The Amended Autopsy Report lists the cause of death as "Complications of acetabular fracture with severe retroperitoneal hemorrhage." (Exhibit H)

8.  Plaintiffs claim that Johnson was deliberately indifferent to Mosley's serious medical needs and base their claim on an assumption that Mosley sustained the acetabular fracture and the bleeding prior to his presentation to the Medical Unit and that failure to properly assess, diagnose and treat his fracture caused Mosley's death.(Docket 100) Defendant Johnson asserts that she is entitled to summary judgment as a matter of law because the uncontroverted evidence establishes that (1) Mosley was able to walk following his examination by Weber, Bennett and Johnson; (2) the acetabular fracture found on autopsy was of such a severe nature it would have prevented Mosley from moving, much less walking if he sustained the injury prior to being evaluated in the medical unit; (3) in reasonable medical probability, Mosley fractured his hip and bled out after he left the medical unit; (4) his fracture occurred sometime in the early morning hours before he was discovered; (5) his injury was catastrophic and could not have been survived because his bleeding was uncontrolled as the result of his liver disease; and (6) Johnson was not deliberately indifferent to his medical needs because Johnson evaluated him, considered his condition and determined on consultation with Bennett that Mosley could bear weight and

return to his cell. Johnson also asserts that there is no evidence to establish that Mosley suffered a fracture prior to his presentation in the medical unit and that she is entitled to judgment as a matter of law.

9. **Standard of Review** Rule 56(b) of the Federal Rules of Civil Procedure provides that a defending party may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor. Summary judgment is mandated when the pleadings and the evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(c). The movant has the burden of proving the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322. To satisfy this burden, the movant may present evidence that negates a material element of the non-movant's claim. Once the movant makes this showing the burden shifts to the non-movant to show that summary judgment is not appropriate. *Id.* The non-movant must go beyond the pleadings and present competent summary judgment evidence showing that there is a genuine issue for trial. *LTV Ed. Sys., Inc. v. Bell*, 862 F.2d 1168, 1172 (5th Cir. 1989). '[W]hen the nonmovant has the burden of proof at trial, the moving party may make a proper summary judgment motion, thereby shifting the summary judgment burden to the nonmovant, with an allegation that the nonmovant has failed to establish an element essential to that party's case." *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 335 (5th Cir. 2017); *see also Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999) ("When a moving party alleges that there is an absence of evidence necessary to prove a specific element of a case, the nonmoving party bears the burden of presenting evidence that provides a genuine issue for trial."); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075, 1076 n.16 (5th Cir. 1994) (en banc) (noting that the party moving for summary judgment is not required to "negate the elements of

the nonmovant's case," but may "satisfy [its] burden under Celotex" by "assert[ing the] absence of facts supporting the elements of the plaintiffs' theory of recovery").

10. In ruling on a summary judgment motion of any kind, courts must consider the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any. *Id.* In addition, it is well established that the non-movant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, or "only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Furthermore, the mere allegation of a factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In this case, the evidence is overwhelming and uncontroverted and it establishes that Mosley did not have a fracture when he was seen in the medical unit, that Johnson appropriately evaluated and treated Mosley, that she was not deliberately indifferent and that Mosley's death was caused by a severe acetabular fracture and subsequent bleeding which occurred shortly before his death.

11. **Expert testimony.** Only one expert witness in this case, Peter Holmes, M.D. is a board certified orthopedic surgeon who has experience treating and managing patients who have the type of fracture that Mosley sustained. (Exhibit J at 156:1-7) Plaintiffs' retained expert witness Sheryl Ann Innerarity, FNP, is not a physician, is not an orthopedic surgeon, and agreed that she would defer to an orthopedic surgeon's opinions on the treatment and diagnosis of acetabular fractures. (Exhibit I at 14:4-13, 74:6-9) Sean MacAuley and Bexar County's expert, James Fieg, M.D., a pathologist who performed the autopsy, testified that he would defer to the

opinions of an orthopedic surgeon. (Exhibit O at 36:7-11) Katherine Whitely, M.D. the medical director at DCHS also agreed that she would defer to an orthopedic surgeon's opinions as she is not trained in that field. (Exhibit P at 151:2-7) All of the opinions expressed by Dr. Holmes in his deposition were based on his extensive education, experience and training and based upon reasonable medical probability.(Exhibit J at 156:10-12, 164:4-7) Dr. Holmes reviewed the UHS medical records, the CT scan of Mosley's hip taken at Methodist Hospital, and medical records from Arizona which established Mosley's alcoholism, drug use, extensive liver disease, bleeding disorders and a diagnosed pseudo aneurysm in his right hip.(Exhibit J at 5:21-24, 6:19-21, 24:20-25:9, 39:14-40:2) He explained that he has treated many patients who sustained injuries similar to that sustained by Mosley and compared Mosley's hip fracture to a "major dashboard injury" or to that which would be sustained by "falling off a two-story building and landing on a leg." (Exhibit J at 156:6-9, 29:11-12) He described the fracture seen on the CT scan as a "VMF" or "very major fracture" and explained that, in his experience, patients who suffer this type of fracture often need to be given general anesthesia in an ER setting in order to move or manipulate their leg.(Exhibit J at 43:11-14, 166:22-169:15) He further testified that the vital signs reflected in the UHS records are not consistent with the type of fracture sustained by Mosley.(Exhibit J at 157)

12. Dr. Holmes further testified that Mosley would not have been able to walk with the fracture reflected in the CT scan and shown on autopsy; that Mosley would not have been able to move on his own; that Mosley could not have been moved without experiencing excruciating pain and agony. (Exhibit J at 25:10-16, 74:13-21, 105:7-106:9, 142:4-13; 157:7) He also testified that the CT scan indicated Mosley had arthritis in his hip and a pseudo aneurysm which caused him to complain of hip pain on multiple occasions in Arizona, and, which would

explain the pain complaints at the BCADC. (Exhibit J p. 24:20-25:9) Dr. Holmes' testimony established that someone with an injury like Mosley's would not be able to stand up and walk, even after resting and being administered 2 milligrams of Lorazepam. (Exhibit J at 162:12-18) Therefore, in Dr. Holmes' expert opinion, Mosley could not have had a fracture when he was seen in the medical unit. (Exhibit J at 156:22-157:8) Dr. Holmes noted that he has relied on the medical records, which are made at the time that the care is provided and that entries in medical records are "facts" upon which an expert medical witness can rely. (Exhibit J at 28:8-14) Dr. Holmes opined that the most likely cause of Mosley's acetabular fracture was either a seizure or an attack from another inmate, which occurred after Mosley returned to his cell following Johnson's examination. (Exhibit J at 25:17-26:15, 29:10-22, 42:2-6) Dr. Holmes further testified that Mosley probably died within an hour of sustaining the fracture and could not have been saved. (Exhibit J at 25:14-16, 26:3-7, 42:2-10, 44:13-20) Dr. Holmes explained that Mosley had low hemoglobin, low blood clotting factors, liver failure, microcytic anemia, and a very severe fracture which meant that (1) Mosley could not survive the amount of blood loss that a healthy person could survive and (2) Mosley probably bled out very quickly after the fracture occurred.(Exhibit J at 35:8-21, 36:17-41:16, 42:2-45:5)

13. Plaintiffs expert refused to accept as true, the sworn deposition testimony of the witnesses who encountered Mosley (however, she selected a portion of Guerra's testimony and adopted it as fact) and has disregarded most of the entries in the UHS medical records (except those which support Plaintiffs' case) because this uncontroverted evidence does not support Plaintiffs' theory of recovery. She did not review the CT scan and was not aware of much of Mosley's medical history as reflected in the medical records from Arizona.(Exhibit I at 48:13-14, 79:6-14) She acknowledged that she is basing her entire opinion on an "assumption" that Mosley

sustained the fracture before he presented to the Medical Unit. (Exhibit I at 96:16-18, 108:18-20; 133:22-24, 141:18-22) Her position is that any medical records or testimony which does not support the assumptions she has made is "inconsistent with reality."(Exhibit J at 87:24-88:4, 96:9-15, 97:10-14, 97:20-98:14, 98:21-99:14, 99:24-100:5, 100:12-15, 102:4-6, 106:17-24, 107:19-22, 110:6-12, 115:23-25, 116:22-117:1, 117:5-12, 133:17-21, 138:14-25, 145:10-12, 146:3-9, 172:2-5, 193:14-17) In her opinion, it is "inconsistent with reality" for a patient with the type of fracture found on Mosley's autopsy to get up on a gurney or walk. (Exhibit I at 96:13-14, 97:10-102:6) She does not believe Johnson and Bennett's sworn and uncontroverted testimony that Mosley walked back to his cell. (Exhibit I at 115:23-25, 116:1-117:1) However, there is no testimony or other evidence to the contrary upon which Innerarity can rely. All of the witnesses who were involved in Mosley's care have testified, and their testimony is consistent. Innerarity agreed if Mosley did not have a fracture at the time of his examination by Johnson, then the medical records and their contents would not surprise her. (Exhibit I at 108:21-23)

14.     Plaintiffs have all acknowledged that they have no personal knowledge of the events that occurred around the time of Mosley's incarceration at the BCADC. (Exhibit K at 55:13-16; Exhibit L at 33:6-35:2; and Exhibit M at 48:21-49:13)

15.     Plaintiffs cannot meet their burden of proof because the evidence conclusively defeats their allegations and the assumptions made by their paid expert, that Mosley had a fracture when he was seen by Weber, Johnson and Bennett. The uncontroverted evidence establishes that Mosley went to the medical unit after Ponton called a Code 1. (Exhibit A at 0019; Exhibit C at 36:22-24; Exhibit D at 86:10-15) Weber evaluated Mosley and did not find any indication of a fracture or feel that he needed an x-ray. (Exhibit A at 0020, Exhibit D at 107:11-13, 107:23-108:12) Johnson and Bennett both examined Mosley while he was in the

medical unit and his presentation did not indicate he had a fracture or warrant an immediate transfer to University Hospital for an x-ray. (Exhibit A at 0022; Exhibit E at 143:20-22; Exhibit F at 111:7-9, 203:19-22) It is uncontroverted that Mosley died as the result of an acetabular fracture and internal bleeding. (Docket 100 ¶63, Exhibit H) Plaintiffs are left with a bare assumption, unsupported by facts, that Mosley sustained the acetabular fracture before Ponton called the Code 1 and before Weber, Johnson and Bennett evaluated him. In order to defeat summary judgment, Plaintiffs must point to evidence in the record that supports their contention that there is a genuine dispute of material fact. FED. R. CIV. P. 56(c)(a)(A). Plaintiffs cannot do so. They have all testified that they have no personal knowledge of the events that occurred around the time of Mosley's incarceration at the BADC.(Exhibit K at 55:13-16, Exhibit L at 33:6-35:2, Exhibit M at 48:21-49:13) Plaintiffs' allegation that Mosley was unable to walk when he left the medical unit is not evidence. *See Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) ("[P]leadings are not summary judgment evidence.") Plaintiffs' expert's unsupported belief that the medical records are incorrect, is not evidence.

16. It is clear from the summary judgment evidence, that despite Plaintiffs' allegations, wishes and their paid expert's assumptions, Mosley did not have a hip fracture at the time that Weber, Bennett and Johnson saw him. Based on the type of fracture shown on Mosley's CT scan and found on autopsy, the medical evidence shows that he could not have moved or walked with that type of fracture. Dr. Holmes' testified that given the severity of Mosley's fracture, he would not have been able to walk and this opinion was echoed by Forsberg. (Exhibit B at 95:2-3) Plaintiffs' own expert, Innerarity also agreed that a patient with a fracture as severe as Mosley's would not have been able to get onto the gurney unassisted or to walk. Given the uncontroverted evidence that Mosley was walking, and the expert testimony that

12

Mosley could not have been unable to walk with such a severe fracture, it is clear that Plaintiffs cannot raise a genuine issue of fact on this matter.

17.     Plaintiffs cannot meet their burden by relying on Innerarity's opinion that Mosley had a fracture at the time Johnson treated him to support of their allegations because Dr. Innerarity admitted she disregarded sworn testimony and notes in the medical records because she believed the evidence was "inconsistent with reality." Innerarity does not have the authority to disregard testimony or evidence based on her determination of the credibility of witnesses. *United States v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014)(noting that the credibility of witnesses is generally not an appropriate subject for expert testimony); *United States v. Azure*, 801 F.2d 336, 339–40 (8th Cir. 1986) (it is not the province of an expert to determine the credibility of witnesses); *United States v. Scop*, 846 F.2d 135, 142 (2d Cir. 1988), on reh'g, 856 F.2d 5 (2d Cir. 1988) (expert witnesses may not offer opinions on relevant events based on their personal assessment of the credibility of another witness's testimony and may not opine as to the credibility of the testimony of other witnesses at the trial); *Poole-Ward v. Affiliates for Women's Health, P.A.*, 329 F.R.D. 156, 168 (S.D. Tex. 2018) (expert may not characterize witness testimony, assess witness credibility, present opinions based on clearly incorrect assumptions, or offer legal conclusions). Because she is seeking to put forth opinion testimony based solely on her "assumptions" and her blatant disregard of uncontroverted evidence, Innerarity's testimony should be disregarded because it is not supported by any evidence and is based on unsubstantiated assumptions. Innerarity's expert opinion is based on facts that are not supported by the medical records or deposition testimony and is without probative value. *See Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242, 113 S. Ct. 2578, 2598, 125 L. Ed. 2d 168 (1993) ("When an expert opinion is not supported by sufficient facts to

validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict"); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) (if an expert opinion is fundamentally unsupported, then it offers no expert assistance to the jury and its lack of reliable support may render it more prejudicial than probative, making it inadmissible); *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1436 (9th Cir. 1995) (if there are undisputed facts that render the inference unreasonable, the expert opinion is insufficient to support a jury verdict); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000) (an expert's conclusions must have a basis in established fact and cannot be premised on mere suppositions or subjective belief); *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995) ("When an expert's opinion is based on assumed facts that vary materially from the actual, undisputed facts, the opinion is without probative value and cannot support a verdict or judgment"). Because Innerarity's opinion that Mosley had a fracture at the time that he was seen by Weber, Bennett and Johnson is not supported by the evidence, it should be given no weight. The uncontroverted evidence, including medical records and deposition testimony, shows that Mosley was able to walk after Johnson examined him. The medical experts both agreed that a person with a fracture as severe as found on autopsy would have been unable to walk. Based on the uncontroverted evidence and the expert's testimony, it is clear that Mosley did not have a fracture at the time that he was seen by Weber, Bennett and Johnson.

18.     Defendant Johnson is entitled to summary judgment as a matter of law, and Plaintiffs claims against her should be dismissed. Plaintiffs have presented no evidence that Mosley had a hip fracture at the time that he was examined by Johnson. Their expert testified her opinion was based on the assumption that Mosley already had a hip fracture. Johnson, Bennett,

Weber, Guerra and Ponton all testified that Mosley was able to walk. The medical experts both agreed that given the severity of Mosley's fracture, he would not have been able to walk if he had a fracture when Johnson treated him. All evidence shows that Mosley did not have the fracture at the time Johnson examined him, and thus, Plaintiffs claims against Johnson for deliberate indifference should be dismissed.

WHEREFORE, PREMISES CONSIDERED, Defendant Henry Etta Johnson, LVN respectfully requests that her Motion for Summary Judgment be in all things granted; that Plaintiffs take nothing of and from this Defendant; that Defendant recover her costs and that she be granted any other relief to which she may be entitled.

Respectfully submitted,

*/s/ Laura Cavaretta*

LAURA A. CAVARETTA
State Bar No. 04022820

CAVARETTA, KATONA & LEIGHNER, PLLC
One Riverwalk Place
700 N. St. Mary's Street, Suite 1500
San Antonio, Texas 78205
Telephone: 210-588-2901
Telecopier: 210-588-2908

ATTORNEYS FOR DEFENDANT,
HENRY ETTA JOHNSON

CERTIFICATE OF SERVICE

This is to certify that a correct copy of the above and foregoing has this the 16 day of July, 2019 been forwarded to:

Brian McGiverin                              *VIA ELECTRONIC FILING SERVICE*
Austin Community Law Center
1411 West Ave., Suite 104
Austin, Texas 78701
brian@austincommunitylawcenter.org
Attorney for Plaintiffs

Kristen Bloodworth                         *VIA ELECTRONIC FILING SERVICE*
Assistant District Attorney
101 W. Nueva – Civil Division
San Antonio, Texas 78205
kristin.bloodworth@bexar.org
Attorney for Sean MacAuley
and Bexar County

_____
LAURA A. CAVARETTA